FILED

2008 OCT -6 P 2:16

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

E-filing

1  Alan Himmelfarb
2  KamberEdelson, LLC
   2757 Leonis Blvd.
3  Vernon, California 90058-2304
4  Telephone: (323) 585-8696
   ahimmelfarb@kamberedelson.com
5
6  Scott A. Kamber
   KamberEdelson, LLC
7  11 Broadway, 22nd Floor.
8  New York, NY. 10004
   Telephone: (212) 920-3072
9  Fax: (212) 202-6364
10 skamber@kamberedelson.com
11
   Attorneys for Plaintiff Brandon Gardner
12
13
14 **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15
16 Brandon Gardner, an individual, on      )   CASE No.
   behalf of himself and all others        )
17 similarly situated,                      )   **C08    04629**
                                           )
18 Plaintiff,                               )   COMPLAINT
                                           )
19        v.                                )
                                           )   JURY DEMAND
20 Electronic Arts, Inc., a Delaware        )
   corporation, and DOES 1-75              )
21                                          )
          Defendants.                       )
22
23                          **BY FAX**
24
25
26
27
28

────────────────────────────────────
COMPLAINT
1

## CLASS ACTION COMPLAINT

Plaintiff Brandon Gardner ("Plaintiff"), by his attorneys, states this complaint against Defendant ELECTRONIC ARTS, INC. ("Electronic Arts" or "EA"). Plaintiff's allegations are based on information and belief, except to his own actions, which are based on knowledge. Plaintiff's allegations on information and belief are based on the investigation of his counsel, and facts that are a matter of public record.

## NATURE OF THE CLAIM

1.     This is a class action concerning the ***Mass Effect*** computer game ("Mass Effect") published by Electronic Arts. Mass Effect is advertised and sold as a game for the PC.   When consumers make their purchase of Mass Effect, they are told:

- Experience a rich and engrossing story where your choices decide the fate of galaxy
- Engage in emotionally charged interactions with the most realistic digital actors ever seen in a video game, using an innovative new dialog system
- Immerse yourself in an incredible new adventure from world-famous masters of the RPG; BioWare
- Stunning high resolution graphics, optimized GUI and controls for PC gamers
- Dominate the battlefield with new individual squad member command system

Purchasers are invited to install and use the game on their computers.

2.     What purchasers are *not* told is that, included in the purchase,

installation, and operation of Mass Effect is a second, undisclosed program. The name of the second program is SecuROM, which is a form of Digital Rights Management (DRM) for computer games. Although consumers *are* told that the game uses access control and copy protection technology, consumers are not told that this technology is actually an entirely separate, stand-alone program which will download, install, and operate on their computers, along with the Mass Effect download. Consumers are given no control, rights, or options over SecuROM. The program cannot be completely uninstalled. Once installed, it becomes a permanent part of the consumer's software portfolio. Even if the consumer uninstalls the Mass Effect game, and entirely deletes it from their computer, SecuROM remains installed and operating on their computer. The only way to completely remove SecuROM, and all aspects of its original secret installation, is through a complete wipe of the hard drive through reformatting or replacement of the drive.

3.     This action is brought on behalf of a class of all consumers globally who have purchased the Mass Effect computer game. Electronic Arts' intentionally did not disclose to any such purchasers that the Mass Effect game disk also possessed a second, hidden program which secretly installed to the command and control center of the computer (Ring 0, or the Kernel), and surreptitiously operated, overseeing function and operation on the computer,

preventing the computer from operating under certain circumstances and/or

disrupting hardware operations.  These actions constitute violations of the

California Consumer Legal Remedies Act, Civil Codes § 1750 et seq. and

California's Unfair Competition Law, Business & Professions Code §§ 17200, et

seq., and further constitute a trespass to chattels.  In addition the use and

implementation of the SecuROM program violates purchasers' rights under the

Copyright Act (First Sale Doctrine) to freely and without restriction sell, transfer,

or otherwise convey their copyrighted copy of the Mass Effect game to others.

## INTRODUCTORY ALLEGATIONS

4.      This consumer class action arises from defendant Electronic Arts

Inc.'s ("Electronic Arts" or "EA" or "defendant"), engaging in deceptive and

unlawful conduct in designing, marketing, distributing, and selling a computer

game disk that contains undisclosed and unconsented to Digital Rights

Management (DRM) technology.

5.      Electronic Arts, Inc. (NASDAQ: ERTS) is a worldwide American

developer, marketer, publisher, and distributor of computer and computer games.

Established in 1982, the company was a pioneer of the early home computer games

industry.  Originally, EA was a home computing game publisher.  In the late

1980s, the company began developing games in-house and supported consoles by

the early 1990s.  EA later grew via acquisition of several successful developers.

By the early 2000s, EA had become one of the world's largest third-party publishers. In 2007 EA ranked 8th on the list of largest software companies in the world. In May 2008, the company reported net annual revenue of US$ 4.02 billion in fiscal year 2008.

**The Mass Effect Computer Game**

6.    The full version of the Mass Effect Computer game was released on or about May 28, 2008 in North America. The game was released June 5, 2008 in Europe. Mass Effect is also available for direct download from Electronic Arts.

7.    ***Mass Effect*** is an action role-playing game developed by BioWare for Xbox 360 and the PC. The game takes place in the year 2183, with the player assuming the role of an elite human soldier named Commander Shepard, set out to explore the Galaxy on a starship, the SSV *Normandy*.

8.    Mass Effect was well received and highly rated by game review blogs and journals. It received numerous awards and high scores, even earning the accolade of "game of the year" from many gaming websites.

**SecuROM  Digital Rights Management (DRM) Technology**

9.    The Mass Effect game must be installed from the gamedisk (cd) or downloaded from EA's website onto a computer in order for the game to function.

10.    When a user installs the Mass Effect game, a second program, SecuROM, is automatically and secretly installed along with the Mass Effect

game.

11.     SecuROM installs itself to the Kernel of the computer (the administrative command and control center of the computer). Once installed, SecuROM then allows itself to access to all parts of the computer.

12.     The operating system of a computer utilizes different parts or levels of the computer, determined by the need of the software for access and control over different aspects of the hardware or software. These parts are commonly called Ring 0, 1, 2 and 3. Ring 0 is sometimes referred to as the Kernel. The Kernel is usually used by the Operating System to run the computer and it has access to everything on the computer. Ring 3, which is the normal zone used by Software has much lower permissions. SecuROM represents that it installs itself to Ring 3 (by having a part of itself called the UA7service.exe written to Ring 3), when in fact it installs its primarily operational code to Ring 0.

13.     Writing itself to the Kernel of the computer allows SecuROM to have control over all other programs and processes on the computer, including equipment that computer users are legally permitted and entitled to possess (e.g., two cd/dvd drives on the computer).

14.     Like any program, SecuROM uses computer resources. It uses memory, processor cycles, and program handles (leaving less for any uses the owner might have had planned for their computer). To transmit information back

to EA, SecuROM uses the computer owner's internet connection. Whenever it downloads, installs, or runs, SecuROM uses resources belonging to the computer owner, which, by definition, make those resources unavailable for other tasks. Like any program, SecuROM takes up space on the user's hard drive. Like any program, SecuROM offers computer users another opportunity for something to go wrong, if it fails. And, just like any other program, SecuROM does have its failures.[1]

15.     No notification of the nature, function, and operation of the SecuROM program was provided to Mass Effect purchasers. No notice of its secret installation was provided to persons who loaded and installed the Mass Effect computer game. No one was told that it was a separate program installing to the Kernel of the computer and that it could not be uninstalled.

16.     At EA's online store, the website describes the games features:

- Experience a rich and engrossing story where your choices decide the fate of a galaxy
- Engage in emotionally charged interactions with the most realistic digital actors ever seen in a video game, using an innovative new dialog system

---

[1]     See. E.g.:  http://forums.guru3d.com/showthread.php?t=270437
A version of SecuROM installed with many recent games is responsible for crashing games possibly in all versions of windows and also the explorer right click context crash on Vista (also affects ME). The file responsible for crash is CMDLineExt.dll which can be found in System 32. CMDLineExt.dll is for a right click context menu used for starting SecuROM analysis for game executables.

- Immerse yourself in an incredible new adventure from world-famous masters of the RPG, BioWare
- Stunning high resolution graphics for PC
- Optimized GUI and controls for PC gamers
- Dominate the battlefield with new individual squad member command system

Further, the website lists the system requirements for Mass Effect:

Internet Connection - Required
OS - Windows XP/Vista (FAT 16/32 File Systems not supported for Digital Download)
Processor – Single Core: 2.4 GHz or faster / Multiple Cores: 2.0 GHz or faster
Memory – XP: 1.0 GB RAM / Vista: 2.0 GB RAM
Hard Drive – 15 GB (30 GB for Digital Download)
DVD Drive – 1 SPEED (Not required for Digital Download)
Video Card – 256 MB with Pixel Shader 3.0 support*
Sound Card - DirectX 9.0c compatible
DirectX - Version 9.0c October 2006 (included on disc)
Input - Keyboard, Mouse
*Supported chipsets: NVIDIA GeForce 6800 GT or greater; ATI Radeon X1300 XT or greater. Laptop versions of these chipsets may work but are not supported. Updates to your video and sound card drivers may be required.

17.     Nowhere in any of EA's websites descriptions of its Mass Effect game, or in its advertisements or promotions of the game, did EA disclose that the Mass Effect game contained a separately installed, stand alone, unremovable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations.

18.     EA's EULA for Mass Effect states:

> Technical Protection Measures. Our Software uses access control and copy protection technology. An internet connection is required to authenticate the Software and verify your license. You must periodically connect to the Internet to authenticate the Software and refresh your license. If your license needs to be refreshed and you are not connected to the Internet, you will not be able to use the Software until you reestablish an internet connection and refresh the license. The first end user of this License can install and authenticate the Software on a set number of machines which may vary by product. If the Software permits access to additional online features, only one copy of the Software may access those features at one time. Additional terms and registration may be required to access online services. If you disable or otherwise tamper with the technical protection measures, the Software will not function properly.

19.     EA's representations about its Mass Effect DRM talk in terms of "internet connection" and "online services" – as if all "Technological Protection Measures" were entirely online-based and resident at EA's website, instead of being program-based at the operating system level of the user's own computer. These statements by EA constitute significant misrepresentations of EA's DRM regime given the fact that the actual process involves a separate DRM program permanently installed onto the hard drive of the user's computer at the Kernel.

20.     By forcing a secret installation of SecuROM to the Ring 0 of the computer systems of plaintiff and the class, EA took for itself administrative rights higher than the actual owner of the computer, without informing the computer

owner of its intention to acquire such computer privileges, and without obtaining

consent from the owner of the computer in its acquisition of those computer

privileges.

21.    By forcing a secret installation of SecuROM to the Ring 0 of the

computer systems of plaintiff and the class, EA has rendered every single computer

on which its SecuROM program is installed vulnerable to malicious attack.

Because of the way the SecuROM program is written and installed, there exist

simple exploits that can permit hackers and criminals to gain access or control of

any user's system on which SecuROM is installed.  EA installed SecuROM

directly to the computer's Kernel.  SecuROM is a vulnerable, ill-protected program

operating at the highest level of security on the computer.  Every single computer

owner that has SecuROM installed on their computer is vulnerable to a third party

direct attack on that user's OS Kernel, permitting the complete control of every

aspect of that computer system by outside third parties.  Simply by virtue of having

the program installed on their computers, EA's SecuROM program has opened a

major security hole directly into the most sensitive, and ordinarily, most highly

protected systems on a computer.

22.    In addition, and also undisclosed to purchasers of the Mass Effect

computer game, the SecuROM program is designed to directly interfere with,

and/or disable certain software functions.  Specifically, SecuROM will disable

certain programs that the designers of the SecuROM program believe that

computer users should not own, or possess, or operate on their computer, to wit:

- Fantom CD Emulator
- Alcohol 120%
- Nero Image Drive
- Phantom CD
- Clone CD
- Ark Virtual Drive
- Veritas DLA
- Daemon Tools
- AnyDVD
- Process Explorer

23.     Process Explorer is a commonly used system monitoring and

examination utility published by Microsoft which is used as the first step in

debugging software or system problems.  Nevertheless, EA, by virtue of its secret

installation of SecuROM, has determined that it should have control over which

programs a user may run or utilize on their computer, and so it designed SecuROM

to prohibit the operation of this program, and others, if Mass Effect is open.

24.     In addition, and also undisclosed to purchasers of the Mass Effect

computer game, the SecuROM program is designed to directly interfere with,

and/or disable hardware functions.  Specifically, SecuROM will disable multiple

cd / dvd burners on computers.  This disabling occurs regardless of whether the

Mass Effect game is running or not.  In other words, SecuROM will seek out and

disable any secondary disk burning hardware on any computer on which it is

installed.  EA, by virtue of its secret installation of SecuROM, has determined that it should have control over what hardware a user may have installed on their computer, and so it designed SecuROM to prohibit the operation of certain hardware regardless is Mass Effect is open or not.

25.     Plaintiff brings this class action on behalf of a global class of consumers who purchased Electronic Arts' Mass Effect computer game which contained an undisclosed, secret, separately installed, stand alone, unremovable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations.  Plaintiff and the proposed class members would not have purchased the Mass Effect computer game and/or paid as much for it had they known the truth about the product.

26.     Plaintiff seeks actual damages, individual restitution, equitable relief, civil penalties, costs and expenses of litigation, including attorneys' fees, and all further relief available.

## VENUE AND JURISDICTION

27.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The aggregate claims of plaintiff and the proposed class members exceed, for all jurisdictional purposes, the sum or value of $5,000,000.00.

28.     Electronic Arts is a Delaware corporation headquartered in California and is a citizen only of the states of California and Delaware.  Plaintiff is a citizen and resident of Florida, and asserts claims of behalf of a proposed class whose members are scattered throughout the world, and throughout the fifty states (including the 48 states besides California and Delaware) and the U.S. territories: there is minimal diversity of citizenship between proposed class members and the Defendant.

29.     This Court also has personal jurisdiction over defendant because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, (b) defendant Electronic Arts' principal place of business is located in this state, and (c) defendant is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally availed itself of the markets in this state through the promotion, marketing, and sale of its product in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

30.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c).  A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred in this District, defendant Electronic Arts Inc.'s principal executive offices and headquarters are located in this District at 209 Redwood Shores Parkway, Redwood City, CA 94065, and defendant conducts

business with consumers in this District.

31.    Jurisdiction and venue are also proper in this district because the EA End User License Agreement ("EULA") contains a clause entitled "Governing Law" which expressly vests jurisdiction and venue for actions related to the Mass Effect computer game and its EULA in the state and federal courts of California and this district:

> Unless expressly waived by EA in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the California state and federal courts having within their jurisdiction the location of EA's principal corporate place of business. Both parties consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by California or federal law.

## PARTIES

32.    Plaintiff Brandon Gardner (Plaintiff) is a citizen and resident of Calhoun County, Florida. Plaintiff purchased a copy of the Mass Effect computer game. EA did not disclose that the Mass Effect computer game contained an undisclosed, secret, separately installed, stand alone, unremovable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations. Plaintiff would not have purchased the computer game and/or paid as

much for the computer game had he known the truth about the product. Plaintiff brings this action on behalf of himself and all others similarly situated.

33. Defendant Electronic Arts has been and still is engaged in the business of designing, creating, marketing, distributing, and/or selling computer games. Defendant Electronic Arts is a Delaware Corporation with its principal offices at 209 Redwood Shores Parkway, Redwood City, CA 94065. Electronic Arts common shares trade on the NASDAQ (ERTS).

34. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 75, inclusive, and therefore, sues such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon allege that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff.

35. Plaintiff is informed and believes and based thereon allege that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein

occurred within the course and scope of said agency, employment, partnership, and

joint venture, conspiracy or enterprise, and with the express and/or implied

permission, knowledge, consent, authorization and ratification of their co-

defendants; however, each of these allegations are deemed "alternative" theories

whenever not doing so would result in a contraction with the other allegations.

## CLASS ALLEGATIONS

36.     Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the

Federal Rules of Civil Procedure, on behalf of himself and a class defined as

follows:

> All persons or entities globally who purchased as an end-user a Mass
>
> Effect computer game.
>
> Excluded from the class is defendant, any entity in which
>
> defendant has a controlling interest or which has a controlling interest
>
> in defendant, and defendant's legal representatives, predecessors,
>
> successors, assigns, and employees.  Also excluded from the class are
>
> the judge and staff to whom this case is assigned, and any member of
>
> the judge's immediate family.

37.     Plaintiff reserves the right to revise this definition of the class based

on facts he learns during discovery.

38.     The EA End User License Agreement ("EULA") contains a clause

entitled "Governing Law" as follows:

> 13. **Governing Law.** This License shall be governed by and construed (without regard to conflicts or choice of law principles) under the laws of the State of California as applied to agreements entered into and to be performed entirely in California between California residents. Unless expressly waived by EA in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the California state and federal courts having within their jurisdiction the location of EA's principal corporate place of business. Both parties consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by California or federal law. The parties agree that the UN Convention on Contracts for the International Sale of Goods (Vienna, 1980) shall not apply to this License or to any dispute or transaction arising out of this License.

39.    The above Governing Law provision vests jurisdiction in the California state and federal courts in the district of the location of EA's principal corporate place of business (Redwood City, CA). Thus, mandatory jurisdiction in this U.S. District Court vests for any purchaser of the Mass Effect game, wherever purchased, either within or outside of the United States, by virtue of the express EA EULA terms. The above Governing Law provision also requires the application of the laws of the State of California to be applied to any purchase or use of the game anywhere, as if the game were purchased entirely in California and used by California residents. Thus, citizens and residents of all states, and citizens and residents of all countries other than the United States are, for all purposes related to this instant Complaint, similarly situated with respect to their rights and

claims as California residents, and therefore are appropriately included as members of the Class, regardless of their residence or place of purchase of the Mass Effect computer game.

40.     Plaintiff is a member of the class that he seeks to represent.  Members of the class can be identified using records of retail sales and/or other information that is kept by defendant in the usual course of business and/or in the control of defendant.  Class members can also be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by defendant.

41.     **Numerosity**:  Class members are so numerous that their individual joinder is impracticable.  It is estimated that the Class consists of tens of thousands of members.  The precise number of class members is unknown to plaintiff, but it is clear that the number greatly exceeds the number to make joinder impossible.

42.     **Existence and predominance of common questions:**  Common questions of law and fact predominate over the questions affecting only individual class members.  Some of the common legal and factual questions include:

a.      Whether EA fails to disclose the presence of an additional program on the Mass Effect gamedisk;

b.      Whether EA should have separately disclosed the presence of an additional DRM program on the Mass Effect gamedisk, and the

COMPLAINT
18

extent and nature of that program;

c.      Whether defendant should have disclosed, and is liable for its failure to disclose the SecuROM program, the precise details and nature of the program, where and how it would install, and how it would operate, prior to any purchase of the program;

d.      Whether defendant should have disclosed, and is liable for its failure to disclose, the SecuROM program, the precise details and nature of the program, where and how it would install, and how it would operate, prior to any installation of the program;

e.      Whether defendant should have obtained informed consent from the user, prior to the installation of the SecuROM program;

f.      Whether defendant concealed crucial details concerning the presence operation, function, and unremovability of the SecuROM DRM program to the class and the public;

g.      Whether defendant's actions in concealing crucial details concerning the presence, operation, function, and unremovability of the SecuROM DRM program were likely to deceive the public;

h.      Whether defendant made representations that the Mass Effect computer game was of a particular standard or quality, which it did not have;

i.      Whether defendant made representations that the Mass Effect computer game had characteristics, uses, benefits, or qualities which it did not have;

j.      Whether, by its conduct, defendant has engaged in unfair or unlawful business practices with respect to the advertising, marketing, and sale of the Mass Effect computer game;

k.      Whether, by its conduct, defendant has engaged in unfair, deceptive, untrue, or misleading advertising of the Mass Effect computer game;

l.      Whether defendant violated consumer protection statutes and/or state deceptive business practices statutes;

m.      Whether, by its conduct, defendant has trespassed on the computers of all persons who installed the Mass Effect computer game;

n.      Whether defendant's use of the SecuROM program unlawfully interferes with purchasers' rights to sell, transfer, or otherwise convey to another their lawful copy of the Mass Effect game under the First Sale doctrine;

o.      Whether California law applies to all claims and claimants in this action; and

p.     The nature and extent of damages and other remedies to which

the conduct of defendant entitles the class members.

43.     Defendant engaged in a common course of conduct giving rise to the

legal rights sought to be enforced by the class members.  Similar or identical

statutory and common law violations, deceptive business practices, and omissions

regarding the product are involved.  Individual questions, if any, pale by

comparison to the numerous common questions that predominate.

44.     The injuries sustained by the class members flow, in each instance,

from a common nucleus of operative facts.  In each case, defendant designed,

created, supplied, distributed, marketed, and/or sold the Mass Effect computer

game containing the second, undisclosed computer program.

45.     Class members have been damaged by defendant's misconduct.  Class

members have purchased Mass Effect computer games containing an extra,

undisclosed program that secretly installed onto their computers, without notice or

opportunity for consent.  Class members would not have purchased the Mass

Effect computer game and/or paid as much as they did had they known the truth

about the product.

46.     **Typicality**:  Plaintiff's claims are typical of the claims of the other

proposed class members.  Plaintiff purchased a Mass Effect computer game

designed and created by defendant which contained an undisclosed, secret,

separately installed, stand alone, unremovable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations.

47. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is familiar with the basic facts that form the bases of the proposed class members' claims. Plaintiff's interests do not conflict with the interests of the other class members that he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation who will prosecute this action vigorously. Plaintiff's counsel have successfully prosecuted complex actions including consumer protection class actions. Plaintiff and plaintiff's counsel will fairly and adequately protect the interests of the class members.

48. **Superiority**: The class action device is superior to other available means for the fair and efficient adjudication of the claims of plaintiff and the proposed class members. The relief sought per individual member of the class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of defendant. Furthermore, it would be virtually impossible for the class members to seek redress on an individual basis. Even if the class members themselves could afford such

individual litigation, the court system could not.

49.     Individual litigation of the legal and factual issues raised by the conduct of defendant would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

50.     Given the similar nature of the class members' claims and the absence of material differences in the state statutes and common laws upon which the class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

51.     The court may be requested to also incorporate subclasses of plaintiffs, defendants, or both, in the interest of justice and judicial economy.

52.     In the alternative, the class may be certified because:

    a.     the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct by defendant;

    b.     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other

class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.      defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## FIRST CAUSE OF ACTION
### (Violations of Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.)

53.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

54.    The California Consumer Legal Remedies Act ("CLRA") applies to defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.  Plaintiff and the members of the class are consumers who purchase goods (Mass Effect computer games) from defendant for personal, family, or household purposes, and are "consumers" under Civil Code section 1761(d).

55.    The Mass Effect computer games that plaintiff and each of the class members own are "goods" within the meaning of Civil Code section 1761(a).

56.    Defendant has violated the CLRA in at least the following respects:

a.      In violation of Section 1770(a)(5), defendant has represented that the Mass Effect computer game has characteristics, uses,

approval, and benefits it does not have;

b.  In violation of Section 1770(a)(7), defendant has represented that the Mass Effect computer game is of a particular standard, quality or grade, or that goods are of a particular style or model, when it is not; and

c.  In violation of Section 1770(a)(14), defendant has represented that the Mass Effect computer game confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

57.   Defendant concealed material facts regarding the Mass Effect computer games from plaintiff and the members of the class, including the fact that the Mass Effect computer games contained an undisclosed, secret, separately installed, stand alone, unremovable DRM program which would install itself to the command and control center of the computer and oversee function and operation on the computer, preventing certain user actions, preventing certain user programs from operating, or disrupting hardware operations.  Had defendant disclosed such information, it would have been made known to plaintiff and members of the class through the marketing and advertising presented to plaintiff and members of the class by defendant, retailers, resellers, the trade press, and others.

58.   Defendant's failure to disclose the truth about Mass Effect's

companion DRM program, and defendant's conscious concealment of that fact, are

unfair, misleading, and deceptive trade practices under the provisions of the

CLRA, Civil Code § 1770 (a)(5), (7), and (14).

59.    Defendant's deceptive acts and omissions occurred in the course of

selling a consumer product and have occurred continuously through the filing of

this action.

60.    Plaintiff and the members of the class relied upon defendant to

provide them with full and complete disclosure regarding the Mass Effect

gamedisk and all of its contents prior to installation of the programs on the

gamedisk. Defendant intentionally failed to inform plaintiff and the members of

the class of the full disk contents to their detriment. Plaintiff and the members of

the class have all been directly and proximately injured by defendant's conduct,

and such injury includes the purchase of Mass Effect computer games, which they

would not have purchased and/or would not have paid as much for were they

truthfully and fully informed of material facts concerning the products.

61.    In accordance with Civil Code § 1780 (a), plaintiff and members of

the Class seek injunctive and equitable relief as to defendant's violations of the

CLRA; however, in accordance with Civil Code § 1782(a) & (d), plaintiff will

subsequently amend this Class Action Complaint to include a request for damages.

Plaintiff requests that this court enter such orders or judgments as may be

necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as provided in Civil Code § 1780 and the Prayer for Relief.

## SECOND CAUSE OF ACTION
### (Trespass to Chattels, Nuisance and Interference With Use of Property)

62.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

63.     Plaintiff and members of the class, at all times relevant to this action, were the owners and/or possessors of computers.

64.     Plaintiff and members of the class are informed and believe that, beginning in September 2008, Electronic Arts, without Plaintiff's and class members' consent, or in excess of any consent given, knowingly and intentionally accessed Plaintiff's and class members' property, thereby intermeddling with Plaintiff's and class members' right to possession of the property and causing injury to Plaintiff and the members of the class.

65.     Electronic Arts engaged in deception and concealment in order to gain access to the computers of class members to install its SecuROM DRM Program.

66.     Electronic Arts undertook the following actions with respect to each class member's computer:

a.   Electronic Arts accessed and obtained command control over the user's computer during the installation process;

b.   Electronic Arts caused the installation of a new program onto the hard drive of the user's computer;

c.   Electronic Arts programmed the installation to make changes and additions to the registry (the command center and heart of computer operations) of the user's computer.

d.   Electronic Arts programmed the operation of its SecuROM program to function and operate without notice or consent on the part of the owner of the computer, and completely outside of the control of the owner of the computer.

67.   All these acts described above were acts in excess of any authority any user granted when he or she permitted Electronic Arts entry into their computers for purposes of installing the Mass Effect computer game, since none of these acts was in furtherance of installing the Mass Effect computer game.  By engaging in deception and misrepresentation, whatever authority or permission users may have granted to Electronic Arts for purposes of installing the Mass Effect computer game was vitiated.

68.   Electronic Arts' installation and operation of its SecuROM program used, interfered, and/or intermeddled with Plaintiff's and Class members' computer

systems. Such use, interference and/or intermeddling was without Class members' consent or, in the alternative, in excess of Plaintiff's and Class members' consent.

69. Electronic Arts' installation and operation of its SecuROM program constitutes trespass, nuisance, and an interference with Class members' chattels, to wit, their computers.

70. Electronic Arts' installation and operation of its SecuROM program impaired the condition and value of Class members' computers.

71. Electronic Arts' trespass to chattels, nuisance, and interference caused real and substantial damage to Plaintiff and the other Class members.

72. As a direct and proximate result of Electronic Arts' trespass to chattels, nuisance, interference, unauthorized access of and intermeddling with Plaintiff's and Class members' property, Plaintiff and Class members have been injured and impaired in the condition and value of Class members' computers, as follows:

  e. By consuming the resources of and/or degrading the performance of Class members' computers (including hard drive space, memory, processing cycles, and Internet connectivity);

  f. By diminishing the use of, value, speed, capacity, and/or capabilities of Class members computers;

  g. By devaluing, interfering with, and/or diminishing Class members'

possessory interest in their computers;

h.   By altering and controlling the functioning of Class members' computers;

i.   By infringing on Class members' right to exclude others from their computers;

j.   By infringing on Class members' right to determine, as owners of their computers, which programs should be installed and operating on their computers;

k.   By tying Class members' right to utilize the Mass Effect computer game upon the undisclosed, uninformed, secret installation of a second program;

l.   By compromising the integrity, security, and ownership of class members' computers because the SecuROM program can be used by Electronic Arts or others to remotely control, reduce, or alter the functioning of class members' computer programs; and

m.   By forcing consumers to expend money, time, and resources in order to effectuate the removal of the SecuROM program installed on the computers of Class members without notice or consent.

73.   By virtue of the Governing Law provision in Electronic Arts' EULA, all class members, regardless of where they reside, regardless of where they made

their purchase of the Mass Effect computer game, and regardless of physical location of the computers upon which the trespass was perpetrated, are all equally and identically governed by California Law as it is applied to California residents, therefore a global trespass class may be certified using California law as it is applied to California residents.

74.    Plaintiff, on behalf of himself and the Class, seeks injunctive relief restraining Electronic Arts from trespass to chattels, to provide an easy-to-use uninstall tool for the SecuROM program, and damages.

## THIRD CAUSE OF ACTION
### (Violation of the Copyright Act, 17 U.S.C. § 109)

75.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

76.    Electronic Arts sold lawful, copyrighted copies of its Mass Effect computer game to plaintiff and to consumers worldwide.

77.    Pursuant to the terms of the purchase of the copyrighted Mass Effect computer game from Electronic Arts, plaintiff and all other purchasers were given rights to unlimited possession of the game.

78.    Pursuant to the terms of the purchase of the copyrighted Mass Effect computer game from Electronic Arts, plaintiff and all other purchasers were given no time limits on their right to possession of the game.

79.    Pursuant to the terms of the purchase of the copyrighted Mass Effect computer game from Electronic Arts, plaintiff and all other purchasers were given rights to possession of the game upon payment of a single, unitary price and were not required to pay any additional sums, whether periodic or otherwise.

80.    Pursuant to the terms of the purchase of the copyrighted Mass Effect computer game from Electronic Arts, none of the conditions of purchase imposed by Electronic Arts upon plaintiff and other class members were imposed in order to protect Electronic Art's property interests in that particular copyrighted copy of the gamedisk.

81.    Upon purchase of the copyrighted Mass Effect computer game from Electronic Arts, plaintiff and all other purchasers of the copyrighted gamedisk were expressly permitted to dispose of the game if they so chose.

82.    Upon purchase of the copyrighted Mass Effect computer game from Electronic Arts, plaintiff and all other purchasers of the gamedisk were expressly permitted to transfer their copy of the game to others, if they so chose.

83.    In no instance and at no time did Electronic Arts require that plaintiff or other purchasers of the Mass Effect gamedisk to return the copyrighted copy of the Mass Effect computer game back to Electronic Arts, either upon conclusion of the purchaser's use of the game, or at any other time, or upon any other circumstance.

84.   Upon its sale of a copyrighted copy of the Mass Effect computer game, Electronic Arts exhausted its statutory rights to control the distribution of that copy.

85.   Pursuant to 17 U.S.C. § 109, plaintiff and all other purchasers were entitled, without the authority of the copyright owner, to sell, rent, or otherwise dispose of that copy of the Mass Effect computer game in their possession.

86.   Plaintiff and all other purchasers of the Mass Effect computer game from Electronic Arts are, by virtue of the rights granted under 17 U.S.C. § 109, entitled to the use and enjoyment of the software with the same rights that exist in the purchase of any other good.

87.   Despite the fact that plaintiff and all other purchasers of the copyrighted Mass Effect computer game from Electronic Arts own their copy of the game by virtue of their purchase, Electronic Arts deliberately and intentionally sabotaged the games' ability to be sold or transferred to others by coupling the game with the SecuROM program that would render the copy of the game unplayable.

88.   The SecuROM DRM program directly, expressly, and intentionally interferes with the statutory rights of consumers to freely dispose of their copy of the copyrighted Mass Effect computer game by sale or transfer.

89.   Wherefore plaintiff, on behalf of himself and the class, seeks

declaratory relief that the SecuROM DRM program embedded on the Mass Effect gamedisk and mandatorily loaded along with the Mass Effect game, constitutes an unlawful a violation of the Copyright Act, 17 U.S.C. § 109.  Wherefore plaintiff, on behalf of himself and the class, seeks an order for the removal of all restraints and limitations imposed by EA upon the lawful and unrestricted transfer of all copyrighted copies of the Mass Effect gamedisk, including the removal of the SecuROM DRM protection program.

## FOURTH CAUSE OF ACTION
### (Violations of Unfair Competition Law, Business & Professions Code §§ 17200, et seq.)

90.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

91.    Plaintiff brings this cause of action on behalf of himself, the class, and in his capacity as a private attorney general.

92.    Defendant's actions, as complained of herein, constitute unfair, deceptive, and/or unlawful practices committed in violation of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq.

93.    Defendants violated the "fraudulent" prong of § 17200, the "unfair" prong of § 17200, and the "unlawful" prong of § 17200 by the conduct alleged herein.  Defendant's acts and practices have and/or are likely to deceive members of the consuming public.

94.    All of the conduct alleged herein occurred in the course of defendant's business. Defendant's wrongful conduct was part of a pattern or generalized course of conduct repeated on thousands of occasions.

95.    Plaintiff and members of the class suffered injury in fact and lost money or property as a result of defendant's conduct because they would not have purchased the Mass Effect computer game and/or paid as much for it had they known the true nature of all of the products on the gamedisk.

96.    Plaintiff, on behalf of himself and each member of the class, seeks individual restitution, injunctive relief, and other relief allowed under section 17200, et seq.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff and the proposed class members request that the Court enter an order or judgment against defendant including the following:

1.    Certification of the action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to plaintiff's claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of plaintiff as class representative and his counsel of record as class counsel;

2.    Damages in the amount of monies paid for Mass Effect games

(for purposes of clarity, Plaintiff expressly disclaims damages pursuant to the CLRA at this time);

3.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein (for purposes of clarity, Plaintiff expressly disclaims damages pursuant to the CLRA at this time);

4.     For pre-judgment and post judgment interest according to proof;

5.     Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by defendant as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

6.     Other appropriate injunctive relief;

7.     The costs of bringing this suit, including reasonable attorneys' fees; and

8.     All other relief to which plaintiff and members of the proposed class may be entitled at law or in equity.

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable.

DATED this 6th day of October, 2008.

By:   Alan Himmelfarb

Alan Himmelfarb
KamberEdelson, LLC
2757 Leonis Blvd
Vernon. California 90058-2304
Telephone: (323) 585-8696
ahimmelfarb@kamberedelson.com

Scott A. Kamber
KamberEdelson, LLC
11 Broadway, 22nd Floor.
New York, NY. 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kamberedelson.com

Oren Giskan
Giskan & Solotaroff
11 Broadway, Suite 2150
New York, New York 10004
Telephone: (212) 847-8315